UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNETH MEYER FORTNER,

     Petitioner,

v.                                                                    Case No. 8:04-cv-2408-T-27TGW

WALTER A. MCNEIL[1],

     Respondent.

_____/

**<u>ORDER</u>**

    Petitioner, a State of Florida inmate proceeding *pro se*, petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 and challenges the validity of his convictions for trafficking in cocaine (one count) and conspiracy to traffic in cocaine (two counts) (Dkt. #1). The Respondent argues that Petitioner's claims are procedurally defaulted or fail to meet the threshold requirements of 28 U.S.C. § 2254(d) and (e).

    Petitioner was convicted and sentenced to twenty-eight years' imprisonment.[2] The state courts denied Petitioner's subsequent post-conviction motion to correct an illegal sentence, his

---

[1] Walter A. McNeil, Secretary of the Florida Department of Corrections, is substituted as the party respondent. Fed. R. Civ. P. 25(d).

[2] The trial court originally sentenced Petitioner as a habitual offender to thirty-six years' imprisonment on each count (Dkt. #9, Ex. 33, Vol. III, pp. 416-22). On direct appeal, the state appellate court affirmed petitioner's convictions but reversed the habitual felony offender sentence on the trafficking charge and remanded the case for resentencing (Dkt. #9, Ex. 4). Petitioner filed a motion for rehearing and rehearing *en banc* (Dkt. #9, Ex. 5). The state appellate court granted the motion for rehearing and filed a substitute opinion reversing the imposition of the habitual offender enhancement on all three convictions (Dkt. #9, Ex. 6). The trial court resentenced Petitioner to thirty years' imprisonment on each count (Dkt. #9, Ex. 10). Petitioner appealed the resentencing and the state appellate court reversed and remanded the case for resentencing under a corrected guidelines scoresheet (Dkt. #9, Ex. 11). Petitioner was sentenced to concurrent terms of twenty-eight years' imprisonment on each count (Dkt. #9, Ex. 13). Petitioner did not appeal this sentence.

Page 1 of 36

"petition to invoke all writs jurisdiction," and two state Rule 3.850 motions. Petitioner's Section 2254 petition followed.

## STANDARD OF REVIEW

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially

indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

Petitioner has the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). Petitioner's petition is subject to the provisions of the AEDPA because his conviction was entered after the AEDPA was enacted. Consequently, a presumption of correctness attaches to the finding of fact in the trial court's rejection of Petitioner's claims.

## FACTS[3]

Petitioner, his wife, Tracy Gauthier (Gauthier")[4] and John Carlson ("Carlson") lived in the same apartment complex. Carlson agreed to sell cocaine for Petitioner and Gauthier. Carlson was

---

[3] This summary of the facts derives from Petitioner's brief on direct appeal (Dkt. #9, Ex. 1).

[4] At the time of the offenses, Gauthier and Petitioner were engaged. Petitioner and Gauthier subsequently married. Gauthier was also charged with drug-related offenses, which charges were pending at the time of Petitioner's trial (Dkt. #9, Ex. 33, Vol. VII, pp. 557-59).

arrested for drug-related charges after police searched his residence on July 26, 1997. Petitioner paid Carlson's bond and Carlson was released from custody while awaiting disposition of the charges. On August 19, 1997, an unidentified man contacted Carlson seeking to purchase cocaine. Carlson advised this buyer that he did not have any cocaine at that time but could have some the following day. On August 20, 1997, Petitioner delivered two ounces of cocaine to Carlson. Carlson arranged to meet the buyer at an auto-parts store to deliver the cocaine. The unidentified buyer was a police informant. Carlson delivered the cocaine to the informant in exchange for $900.00. Police arrested Carlson as he exited the auto-parts store.

Carlson told police that Petitioner was his cocaine supplier. Carlson agreed to cooperate with police and participate in a "set-up" of Petitioner. Carlson agreed to allow police to place a wiretap on his telephone. Later on August 20, 1997, Carlson called Petitioner to advise that he had not received all the money for the cocaine and Carlson asked Petitioner to meet him at Carlson's apartment later that evening. This conversation was recorded. The police attached a wire to Carlson and positioned themselves in the attic of Carlson's residence awaiting Petitioner's arrival.

Petitioner and Gauthier arrived at Carlson's residence. Petitioner, Gauthier and Carlson discussed payment for the cocaine Petitioner had supplied Carlson earlier that day, the quality of the cocaine, and the purchase and delivery of an additional four ounces of cocaine. Police arrested Petitioner and Gauthier as they exited Carlson's residence.

**Ground One**

Petitioner alleges that the trial court erred by denying his oral motion for continuance. Specifically, Petitioner contends that prior to the commencement of trial, defense counsel requested a continuance based on Petitioner's inability to complete discovery. Petitioner claims that, because

the trial court refused to allow Petitioner to address the court, he requested that he represent himself. The trial court granted the request.  Petitioner, proceeding *pro se*, apprised the court that fifteen essential witnesses had not been subpoenaed for trial.  The trial court allegedly failed to inquire into the availability of the witnesses and denied the motion for continuance.  Petitioner moved to disqualify the judge, alleging that "despite notification that [the] case has not been adequately prepared and that [the] witnesses were not subpoenaed for trial, the judge would order the trial to proceed . . . I was forced to represent myself . . . and I will not receive a fair and impartial trial." The trial court granted the motion to disqualify and assigned the case to another judge.  Petitioner again moved for a continuance, which motion was denied and Petitioner proceeded to trial *pro se*. A jury convicted Petitioner on all counts.  Petitioner contends that these actions "denied [him] a fair and impartial trial, the right and ability to present witnesses and evidence in his defense, the right to counsel and the effective assistance of counsel, and due process" (Dkt. #1, Attach. 2, p. 2).

Petitioner presented this claim on direct appeal based on state law grounds only and failed to allege the violation of a federal constitutional right.  Before a federal court may grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1)(A), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. at 842.  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)).  A federal habeas petitioner "shall not be deemed to have

exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003).

A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d at 1358-59 (*quoting O'Sullivan v. Boerckel*, 526 U.S. at 845). To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (*quoting Duncan v. Henry*, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

Petitioner failed to present the federal component of ground one to the state court on direct appeal. Consequently, he deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. at 845. A federal court cannot grant a Section 2254 petition unless the petitioner has exhausted every available state court remedy. *Snowden v. Singletary*, 135 F.3d at 735. Petitioner's exclusively state law arguments presented on direct appeal leave the exhaustion requirement unsatisfied. *Duncan v. Henry*, 513 U.S. at 365. *See also Baldwin*

*v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). Ground one remains unexhausted and, therefore, precludes federal review.

Neither can Petitioner return to state court to present his federal claims. Because he could have raised and preserved a federal constitutional claim on direct appeal, Petitioner is precluded from doing so collaterally in a Rule 3.850 motion. *See e.g.*, *Childers v. State*, 782 So.2d 946, 947 (Fla. 4th DCA 2001) ("The law is clear that where an issue could have been raised on direct appeal, it is not the proper subject for a Rule 3.850 motion.") (citations omitted). The state procedural rules also preclude a second direct appeal. Consequently, ground one is procedurally defaulted.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152

(1982).  In other words, he must show at least a reasonable probability of a different outcome. *Henderson v. Campbell*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. at 495-96; *Henderson v. Campbell*, 353 F.3d at 892.  "A 'fundamental miscarriage of justice' occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892.  This exception requires a petitioner's "actual" innocence.  *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner fails to demonstrate cause and prejudice excusing his default.  Petitioner has neither alleged nor shown that the fundamental miscarriage of justice exception applies.  Because Petitioner fails to proffer specific facts showing an exception to procedural default, *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), ground one is procedurally barred from federal review.[5]

Even if ground one was not procedurally barred, Petitioner would not be entitled to relief. "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. . . . There are no mechanical tests for deciding when a

---

[5] To the extent these claims might allege a federal due process violation, no relief is warranted.  The limitation on federal habeas review to claims of federal constitutional error applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation.  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976).

denial of a continuance is so arbitrary as to violate due process." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).   When a motion for a continuance for the purpose of securing defense witnesses is denied, a federal court considers the following factors to determine if the trial court abused its discretion in denying the motion: the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony. *Hicks v. Wainwright*, 633 F.2d 1146, 1149 (5th Cir. 1981)[6] (*citing United States v. Uptain*, 531 F.2d 1281, 1287 (5th Cir. 1976)).

Petitioner fails to demonstrate that, under the circumstances, denying his motion for a continuance violated due process.   The oral motion to continue presented on the morning of trial was Petitioner's fifth such motion.[7]   At the hearing on the motion, trial counsel informed the court that he was prepared for trial but that Petitioner had requested that counsel move for a continuance (Dkt. #9, Ex. 33, Vol. III Supp., p. 515).   Petitioner contended that he needed additional time to prepare for trial due to his wife's pregnancy and to have the police surveillance tapes analyzed by an expert and subpoena defense witnesses.   On the day of trial, defense counsel, Norman Canella ("Cannella")[8] had represented Petitioner for nearly one year.   Previous counsel had prepared lists of witnesses and discussed having the tapes analyzed in 1998.   Petitioner disagreed with counsel

---

[6] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

[7] The record shows Petitioner filed four other motions to continue in January 1998 (Dkt. #9, Ex. 33, Vol. I, pp. 54-55), July 1998 (Dkt. #9, Ex. 33, Vol. I, pp. 193-95), October 1998 (Dkt. #9, Ex. 33, Vol. II, pp. 212-13), and March 1999 (Dkt. #9, Ex. 33, Vol. II, pp. 242-43).

[8] Petitioner retained Cannella after the withdrawal of at least two court-appointed attorneys. For purposes of this order, "counsel" will refer to Cannella.

about the utility of some of the witnesses and counsel stated to the trial court that he had suggested to Petitioner that a number of the witnesses were not material and would not significantly contribute to Petitioner's defense. After the trial court denied the motion to continue, Petitioner advised the court that he wanted to represent himself. Following a colloquy, the trial court granted Petitioner's request. Although Petitioner insisted that counsel failed to subpoena numerous witnesses, Petitioner failed to identify any of these witnesses to the court or explain the nature and extent of their testimony. *See Hicks v. Wainwright*, 633 F.2d at 1149.

The state appellate court's affirmance of Petitioner's convictions was neither an unreasonable application of controlling Supreme Court precedent nor an unreasonable determination of the facts. This claim warrants no relief.

**Ground Two**

Petitioner alleges that the trial court denied his right to counsel and to the effective assistance of counsel. Petitioner presents four sub-claims in ground two:

A.  TRIAL COURT'S FAILURE TO CONDUCT INQUIRY

Petitioner argues that he "repeatedly prior to and continuously throughout his trial asserted that he was being denied effective assistance of counsel, forced to waive counsel, that he did not wish to do so, that he was not capable of representing himself, that he needed counsel, and that stand-by counsel, i.e., discharged counsel, was not a valid option" (Dkt. #1, Attach. 2, p. 6). Petitioner contends that the trial court's failure to inquire and make findings with respect to his assertions denied him his constitutional right to counsel and rendered his waiver of counsel involuntary.   To the extent that Petitioner's claim, liberally construed, asserts that the trial court

erred by failing to conduct a *Nelson*[9] hearing, the claim lacks merit. Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990). A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because no federal constitutional question is presented. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Whether the trial court conducted a proper *Nelson* hearing is a matter of state law and is not cognizable on federal habeas corpus review.[10]

## B. WAIVER OF COUNSEL

Petitioner alleges the trial court forced him to choose between representation by ineffective counsel and proceeding *pro se*. Petitioner contends that this choice rendered his waiver of counsel involuntary. Respondent correctly argues both that Petitioner failed to present this claim on direct appeal and that the claim is unexhausted and procedurally barred. Petitioner cannot return to state court to present his federal claim and therefore the claim is procedurally defaulted. Petitioner fails to demonstrate either cause and prejudice excusing his default or that the fundamental miscarriage

---

[9] *Nelson v. State*, 274 So.2d 256, 258-59 (Fla. 4th DCA 1973) held that:

> [W]here a defendant, before the commencement of trial makes it appear to the trial judge that he desires to discharge his court-appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request for discharge. If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court-appointed counsel is not rendering effective assistance to the defendant.

[10] To the extent Petitioner's claim, liberally construed, asserts a violation under *Faretta v. California*, 422 U.S. 806 (1975), the claim is unexhausted. On direct appeal, Petitioner argued his claim based on the decision in *Nelson* only and asserted no federal constitutional claim under *Faretta*.

of justice exception applies. Consequently, this sub-claim of ground two is procedurally barred from federal review.

## C. APPOINTMENT OF STANDBY COUNSEL

Petitioner alleges that the trial court erred by appointing Cannella -- whom Petitioner had discharged following the denial of his fifth motion to continue -- as standby counsel for trial. Petitioner neither claims that the trial court failed to inform him of his constitutional right to counsel, nor challenges the trial court's colloquy into his decision to represent himself.[11]   Rather, the gravamen of Petitioner's claim is that the trial court appointed Cannella as standby counsel without consulting Petitioner.

A trial judge may appoint standby counsel, even over a defendant's objection, to assist the defendant "if and when the [defendant] requests help, and to be available to represent the [defendant] in the event that termination of the defendant's self-representation is necessary." *Faretta v. California*, 422 U.S. at 834, n. 46.   Standby counsel may participate in the trial proceedings, even without the express consent of the defendant, as long as the participation does not "seriously undermin[e]" the "appearance before the jury" that the defendant is representing himself. *Martinez v. Court of Appeal*, 528 U.S. 152, 162 (2000) (*citing McKaskle v. Wiggins*, 465 U.S. 168, 187 (1984)).   However, a defendant has no absolute constitutional right to the counsel of his choice. *United States v. Brown*, 591 F.2d 307, 310 (5th Cir. 1970) ("[T]his Court has held that the Sixth Amendment does not afford a defendant an absolute and unqualified right to counsel of choice even when counsel is retained.").

---

[11]   After Petitioner expressed his desire to represent himself (Dkt. #9, Ex. 33, Vol. III Supp., p. 525), the trial court inquired as to his understanding of the advantages and disadvantages of proceeding *pro se* (Dkt. #9, Ex. 33, Vol. III Supp., pp. 525-30). *See Faretta v. California*, 422 U.S. at 835.  Petitioner chose to proceed *pro se*.

After Petitioner discharged Cannella, Petitioner requested standby counsel (Dkt. #9, Ex. 33, Vol. IV, p. 29). The trial court appointed Cannella as standby counsel.[12] The trial court had no constitutional obligation to appoint standby counsel, much less standby counsel of Petitioner's choice. Petitioner presents no evidence demonstrating that Cannella was incompetent or unable to effectively assist Petitioner as standby counsel. Consequently, the state appellate court's affirmance of Petitioner's convictions was neither an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts.

## D.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

---

[12] Cannella, citing irreconcilable differences, asked the court that he not serve as standby counsel (Dkt. #9, Ex. 33, Vol. IV, pp. 29- 33).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments

support the limitations on investigation." *Strickland v. Washington*, 466 U.S. at 690-91. Petitioner

cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*,

218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could

have done something more or something different. So, omissions are inevitable. . . . [T]he issue is

not what is possible or 'what is prudent or appropriate, but only what is constitutionally

compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v.*

*Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

Petitioner alleges that his trial counsel rendered ineffective assistance by failing to

investigate and call particular witnesses, failing to investigate evidence, and failing to use monies

paid to counsel by Petitioner for investigative purposes. Specifically, Petitioner states counsel

performed deficiently in the following ways:

> a) failing to investigate and speak with defense witnesses and subpoena Petitioner's witnesses for trial;
>
> b) failing to investigate . . . to ascertain that two sets of tapes from different recording devices existed and have the tapes analyzed and transcribed showing that the tape from the microphone inside [witness] John Carlson's apartment showed a break in recording and was of a different temporal length than the tape from the wire worn by John Carlson and demonstrating that the state's transcript of the tape was incorrect and omitted exculpatory statements made by Petitioner and his wife;
>
> c) failing to . . . have John Carlson's financial sheet analyzed to show that the figures were all written with the same pen at the same time;

d) failing to utilize some of the $8,500.00 paid to counsel for investigative costs or to have petitioned the trial court for partial costs;

e) failing to investigate the existence of telephone records which existed and had been subpoenaed by the state which would have supported the defense;

f) failing to investigate fingerprint evidence which was discovered on the package Carlson claimed cocaine had been delivered to him in to establish that such prints did not belong to Petitioner and determine the identity of Carlson's true source of cocaine;

g) failing to investigate Carlson's true source of cocaine and facts indicating that Petitioner did not deliver cocaine to Carlson;

h) failing to investigate Carlson's additional arrests;

i) failing to investigate the existence of plea agreements made [and] consideration given by the state to Carlson and [witness] Michelle Wagner for their testimony;

j) failing to investigate improper police conduct and impeachment evidence; and

k) failing to investigate evidence seized from Carlson on his July 26, 1997, and August 20, 1997, arrests.

(Dkt. #1, Attach. 2, pp. 9-10). The state court rejected these claims as follows:

Instead of proceeding with the strategy counsel had planned, Defendant elected to follow his own strategy. As such, Defendant cannot now complain of the quality of his defense. See Washington v. State, 854 So.2d 828 (Fla. 5th DCA 2003). As counsel's planned trial strategy was never presented before the Court, the Court is unable to compare it with Defendant's claims to determine whether counsel was deficient under the Sixth Amendment of the U.S. Constitution. Even if the Court held an evidentiary hearing requiring Defendant's prior trial counsel to reconstruct his strategy, this inquiry would be based largely on speculation as to what would have occurred if Defendant had proceeded with counsel and be potentially riddled with the distorting effects of hindsight.

The Court provides the following comments to Defendant's claims. As to Defendant's claim (a), . . . that counsel failed to subpoena Defendant's alibi witnesses. Counsel represented to the Court that he had considered the expected testimony, concluded that it did not support an alibi defense, and that the testimony would not fit his trial strategy. It is also noted that Defendant fails to state the name and address of the witnesses he wanted subpoenaed, a summary of each of the witnesses' testimony and a statement describing how he was prejudiced. See Odom

v. State, 770 So.2d 195 (Fla. 2d DCA 2000); see also Tyler v. State, 793 So.2d 137 (Fla. 2d DCA 2001).

As to Defendant's claim (b), . . . counsel represented to the Court that this issue concerning hiring an expert to analyze the tapes for tampering had arisen early on when Defendant was represented by other counsel. Trial counsel also explained that he had delegated this avenue of investigation to Defendant to obtain independently of him such an expert and that as of trial, Defendant did not do as instructed. As to a transcript, Defendant suffered no prejudice since the jury could review the tape as evidence and compare it to the State's transcribed version.

As to claim (c), . . . Defendant argues that counsel should have called the document examiner which found that the entries were made at different times. First, Defendant does not allege that he told counsel the document examiner's findings. Further, the examiner reviewed copies and not the original ledger. Although the findings may tend to serve as impeachment evidence of Carlson's testimony, in light of the tapes capturing Defendant and his wife's conversations implicating them in trafficking with Carlson, there is no reasonable probability that had this been presented at the actual trial that the outcome of the trial would have been different.

As to claim (d), . . . Defendant argues that counsel did not use designated monies for expenses as agreed upon. He did not address this during the hearing on his motion for continuance. Instead, when counsel brought up the issue of a lack of money to hire experts, Defendant expressed that he had sources of additional funds available.

Based on the facts stated in claims (e) through (k), there is no reasonable probability that had such been presented at the actual trial that the outcome would have been different. This claim is denied.

(Dkt. #9, Ex. 26) (court's citations to the record omitted). To obtain relief on these claims, Petitioner must establish that the state court unreasonably applied *Strickland*[13] or unreasonably determined the facts in denying his Rule 3.850 motion.

In claim (a), Petitioner alleges counsel failed to investigate and speak with defense witnesses and subpoena the witnesses for trial. As the trial court noted in denying this claim, Petitioner failed

---

[13] Although the state trial court failed to cite *Strickland* as the standard for ineffective assistance, no explicit citation is required. A state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003). In Florida, *Strickland* governs ineffective assistance of counsel claims. *Walls v. State*, 926 So.2d 1156 (Fla. 2006).

in his Rule 3.850 motion to provide the names and addresses of these witnesses, the substance of their testimony, and how the testimony would change the outcome of the trial. *See Tyler v. State*, 793 So.2d 137, 141 (Fla. 2d DCA 2001) ("A claim of ineffective assistance of counsel based on counsel's failure to investigate witnesses must include: (1) the appellant's identification of the witness, or witnesses, who would have testified; (2) the substance of the witness's testimony; and, (3) a description of the prejudice suffered due to the omission of the witness's testimony at trial."). Recognizing this deficiency in his Rule 3.850 motion, in his federal habeas petition, Petitioner lists the witnesses names and proposed testimony.[14]   However, this information fails to cure the deficiency in Petitioner's underlying state post-conviction motion; his failure to provide this information at the state level precludes him from doing so here.  Petitioner fails to meet his burden of proving that the state court's determination is an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts.  This claim warrants no relief.

In claim (b), Petitioner alleges that counsel failed to have the police surveillance tapes analyzed and transcribed, and failed to "ascertain" that the state's transcript of the tapes omitted exculpatory statements of Petitioner and Gauthier.  As the trial court noted in its denial of this claim of Petitioner's Rule 3.850 motion, counsel advised the court that he had provided Petitioner with the name of an expert who could enhance the tapes and advised Petitioner of the costs.  Counsel further advised the court that Petitioner could not afford to have the analysis done (Dkt. #9, Ex. 33, Vol. III Supp., p. 515) and no such testing was undertaken.

Petitioner does not show that counsel had not listened to the tapes, was unaware of their content, or was unprepared to address the content of the tapes at trial.  Even if many reasonable

---

[14] Petitioner presents a verbatim copy of the arguments in his Rule 3.850 motion to support the same claims in his federal habeas petition.

lawyers would not have performed as defense counsel did, no relief is warranted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Petitioner makes no such showing. The trial court neither unreasonably applied *Strickland* nor unreasonably determined the facts related to this claim.

In claim (c), Petitioner alleges that counsel failed to submit for analysis a "ledger"[15] evidencing drug transactions between Carlson and Petitioner as Petitioner requested. Petitioner contends that the numbers written on Carlson's ledger were written all at one time and not over a period of time as Carlson claimed at trial. Petitioner argues that "being written out at one time would substantiate that they were fraudulently compiled and not a true record of claimed transactions."[16] In claim (k), Petitioner alleges that counsel failed to investigate evidence seized from Carlson. At trial, Detective Schneider of the Pinellas County Sheriff's Office testified that police seized $3,000.00 from Carlson. Petitioner claims that this evidence would have supported his theory that Carlson had another drug supplier and would have cast doubt on Carlson's testimony that he "would pay whatever he had to Petitioner on the outstanding debt [Carlson] allegedly owed" Petitioner for cocaine.

Even assuming, *arguendo*, that counsel performed deficiently with respect to these matters, Petitioner fails to demonstrate prejudice. Although a document examiner's testimony that the ledger entries were written all at one time and the fact that police seized $3,000.00 from Carlson may have

---

[15] Carlson testified at trial that he and Petitioner had a practice of keeping track of outstanding debts for cocaine on pieces of scrap paper (Dkt. #9, Ex. 33, Vol. IV, pp. 167-68).

[16] Petitioner attached to his federal habeas petition a copy of a report from a forensic document examiner indicating that the numbers were written at one time (Dkt. #1, Attach. 4). Petitioner states his wife obtained this report after Petitioner's trial and sentencing.

served to impeach Carlson's testimony, in light of the remainder of Carlson's testimony and the other evidence adduced at trial, no reasonable probability exists that the jury would have acquitted Petitioner had counsel pursued the strategy Petitioner proposes on these issues. Petitioner's claim lacks merit and warrants no relief.

In claim (d), Petitioner alleges that counsel failed to properly utilize money Petitioner had paid him. Specifically, Petitioner contends that counsel should have used the money to subpoena witnesses or, alternatively, petitioned the trial court for a partial order of insolvency. Petitioner fails to demonstrate that counsel had an obligation to spend the funds as Petitioner suggests. As the trial court noted in its denial of Petitioner's Rule 3.850 motion, Petitioner indicated at the hearing on his motion to continue that he "always had funds available, my aunt has also been willing to provide funds" (Dkt. #9, Ex. 33, Vol. VIII Supp., p. 18). Thus, there appears no need for counsel to have pursued an order of insolvency as Petitioner suggests. Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts.

In claims (e) and (f), Petitioner alleges that counsel failed to investigate various telephone records and fingerprint evidence that could have shown that Carlson had another drug supplier besides Petitioner. In claim (g), Petitioner makes a broad claim that counsel failed to investigate evidence of Carlson's other drug suppliers. In claim (h), Petitioner claims that counsel failed to investigate Carlson's other drug-related arrests, which arrests would have shown that Carlson had other access to narcotics. These claims are speculative and insufficient to establish a constitutional violation. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559

(11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Even if Carlson had another drug supplier, this fact would not overcome Carlson's testimony and the police surveillance tapes of the transactions between Petitioner and Carlson for cocaine. The state appellate court's denial of these claims was neither contrary to, nor an unreasonable application of *Strickland*.

In claim (i), Petitioner alleges that counsel failed to investigate the existence of a plea agreement between the State and witnesses Michelle Wagner ("Wagner")[17] and Carlson. Wagner testified that she had received no promises in exchange for her testimony (Dkt. #9, Ex. 33, p. Vol. V, p. 240). Carlson testified that he had outstanding charges pending, including a drug trafficking charge resulting from the sale of cocaine to the police informant in the auto parts store (Dkt. #9, Ex. 33, Vol. IV, pp. 175-76). Carlson further testified that he had not been offered any kind of leniency or benefit for his testimony (Dkt. #9, Ex. 33, p. Vol. IV, p. 176). Petitioner fails to show the existence of any plea agreement between the State and Wagner or Carlson. Consequently, this claim of ineffective assistance fails.

In claim (j), Petitioner alleges that counsel "failed to investigate and discover the existence of evidence of improper police conduct and internal affairs investigations concerning falsification of evidence and the improper handling of narcotics and evidence by Detective Schneider and Detective Deborah Schnitzler and other law enforcement officers involved in the investigation and arrest of Petitioner." Petitioner fails to present any factual evidence to support his allegations and demonstrates no entitlement to relief. *See Hill v. Lockhart*, 474 U.S. 52; *Tejada v. Dugger*, 941 F.2d at 1559.

---

[17] Michelle Wagner was Carlson's roommate and was present in the apartment she shared with Carlson when police arrived on August 20, 1997.

**Ground Three**

Petitioner alleges that improper comments by the prosecutor during closing argument resulted in a denial of Petitioner's right to a fair trial and his right to due process. Specifically, Petitioner cites excerpts from twenty-three pages of the transcript of the State's closing and rebuttal argument. Petitioner contends these improper statements entitle him to a new trial. This claim was raised and rejected by the state appellate court on direct appeal.

In Florida, while "wide latitude is permitted in arguing to a jury," *Breedlove v. State*, 413 So.2d 1, 8 (Fla. 1982), such latitude does not extend to permit improper argument, *Gore v. State*, 719 So.2d 1197, 1200 (Fla. 1998). Counsel must contemporaneously object to improper comments to preserve a claim for appellate review. *Merck v. State*, __ So.2d __, 2007 WL 4259197 at *3 (Fla. 2007); *Brooks v. State*, 762 So.2d 879, 898 (Fla. 2000). "The sole exception to the general rule is where the unobjected-to comments rise to the level of fundamental error, which has been defined as error that "'reached down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *Brooks v. State*, 762 So.2d at 898-99.

The record shows that Petitioner objected to only some of the allegedly improper comments (Dkt. #9, Ex. 33, Vol. VIII, pp. 752-86, 829-43). The State opposed this claim on direct appeal (Dkt. #9, Ex. 2, pp. 34-36) with respect to the comments to which Petitioner failed to object, arguing that Petitioner failed to preserve this portion of his claim by contemporaneous objection and lack of fundamental error. The state appellate court affirmed Petitioner's conviction without discussion of this claim (Dkt. #9, Exs. 4, 6).

Generally, before a claim is procedurally barred from federal habeas review, a state court must reject reviewing an incorrectly presented claim. The fact that a federal habeas petitioner failed to abide by a state procedural rule does not, standing alone, prevent a federal court from reaching the federal claim: "The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (*quoting Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). However, because the state appellate court failed to specifically address this claim in its written opinion, the record fails to contain "a 'plain statement' that [the state court's] decision rests upon adequate and independent state grounds." *Harris v. Reed*, 489 U.S. at 261 (*quoting Michigan v. Long*, 463 U.S. 1032, 1042 (1983)). Notwithstanding, because the State argued procedural default and the state appellate court did not reject the argument, the state appellate court is presumed to have applied the state's procedural default rules. *See Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir.) ("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default.") *cert. denied*, 490 U.S. 1071 (1989).

Petitioner's claim, to the extent it relies upon comments to which he failed to object at trial, is procedurally defaulted. Petitioner demonstrates neither cause and prejudice nor manifest injustice to excuse the default. Consequently, this portion of ground three is procedurally barred from federal review.

Ground three of Petitioner's federal habeas claim based upon the comments to which he did object at trial lacks merit. Improper prosecutorial remarks amount to a constitutional violation only if the remarks render the proceedings fundamentally unfair. *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997). The relevant inquiry is whether the remarks "so infected the trial with unfairness

as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S.

637 (1974). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the

narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v.

Wainwright*, 477 U.S. 168, 181 (1986) (*quoting Donnelly v. DeChristoforo*, 416 U.S. at 642).   In

making this assessment, a reviewing court must evaluate the allegedly improper comments in the

context of both the prosecutor's entire closing argument and the trial as a whole.[18]  *Branch v. Estelle*,

631 F.2d 1229, 1233 (5th Cir. 1980).

Petitioner challenges the following statements from the State's closing and rebuttal

arguments:

> p. 762:[19] "Just desperate.  They have this tape, and they have to come up with some
> type of desperate story to try . . ."
>
> p. 763: "I asked on jury selection if anybody had been on - - you know, living on a
> desert island or something for the last twenty or thirty years.  You know, if they
> expect you to believe that, maybe I should have been asking you all, you know, if
> you were born yesterday."
>
> p. 763: "The defense that has been put on here is clearly desperate and beyond
> belief."
>
> p. 776: "And so she desperately tries - - oh, that is just the figures that we are
> spending on getting the house renovated."
>
> p. 777: "Basically, it's just, you know, the old square peg in the round hole type of
> thing going on here.  And it's just a clumsy way to try to explain the way the tape
> is."

---

[18] Federal law on closing argument is the same as Florida law.  To determine whether a prosecutor's remarks
are harmful, "the comments must be analyzed within the context of the closing argument as a whole and considered
cumulatively within the context of the entire record." *Rivera v. State*, 840 So.2d 284, 287 (Fla. 5th DCA 2003) (*citing
Brooks v. State*, 762 So.2d 879 (Fla. 2000); *Cochran v. State*, 711 So.2d 1159 (Fla. 4th DCA 1998)).

[19] These page numbers refer to those in the top right-hand corner of the trial transcript (Dkt. #9, Ex. 33, Vol.
VIII).

p. 782: "They got married just Monday. Ask yourself if that is maybe, you know, done for your benefit for some reason. She's pregnant with his child. It was done well after these charges took place. Again, another sympathy for you."

p. 783: "Ladies and gentlemen, if that wasn't the end of one drug deal and the start of another one, and [sic] moon walk was fake, O.J. didn't do it, and Elvis is still alive."

p. 830: ". . . think about how painful it was for them to try to explain the obvious. B.T. Bardum [phonetic] once said there is a sucker born every minutes [sic] and . . . . Today is not our day to be taken."

p. 833: "Another thing I really need to clear up, the three thousand dollars that was taken from John Carlson was not taken on - - on August 20th. The three thousand dollars that the detective referred to was found in John Carlson's apartment . . . on July 26th."

p. 833: "That is a desperate person right there."

p. 833: "- - [the facts] in this case are that that twenty - - that that money he kept referring to on the 20th, was found on the 26th. Those are the facts, and see, I'm fortunate that I can stand before you and relay the facts to you, because the facts demonstrate this picture very clearly."

p. 836: "What is interesting about that is the fact that they messed up those dates, too, because he says in his opening to you all, that the only reason I bonded Michelle Wagner out . . ."

(Dkt. #9, Ex. 33, Vol. III).[20]

Taken in the context of the entire trial, the prosecutors' comments, even if improper, were not so egregious as to render the trial fundamentally unfair, nor did they infect the trial with such unfairness that the resulting conviction amounts to a denial of due process. *See Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (*en banc*), *cert. denied*, 480 U.S. 911 (1987) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the

---

[20] The trial court advised the jury at the beginning of closing arguments that what the attorneys said was not evidence. The trial court also instructed the jury that they were to look only to the evidence introduced at trial to determine their verdict.

proceeding cannot be said to have been fundamentally unfair."). Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts.

**Ground Four**

Petitioner alleges that his two convictions for conspiracy to traffic in cocaine violate the prohibition against double jeopardy because "they overlap, are duplicitous, and charge separate violations for but one alleged offense" (Dkt. #1, Attach. 3, p. 20).

The Double Jeopardy Clause of the Fifth Amendment "protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). Multiple agreements to commit separate crimes constitute multiple conspiracies. *United States v. Broce*, 488 U.S. 563, 570-71 (1989). The evidence adduced at trial demonstrated two separate agreements for the delivery and sale of cocaine. The first agreement was between Petitioner and Carlson for the delivery of two ounces of cocaine by Petitioner to Carlson, one ounce of which Carlson sold to a police informant, resulting in Carlson's arrest. Carlson paid Petitioner $1,800.00 for the cocaine, completing the transaction. The second agreement was between Petitioner and Gauthier on August 20, 1997, for the acquisition of four ounces of cocaine for delivery to Carlson in two separate transactions of two ounces each. The police surveillance tape admitted at trial shows that Gauthier offered to contribute money for the purchase of the four ounces of cocaine and that Gauthier and Fortner decided to make two trips to their supplier to obtain the cocaine.[21] Consequently, different facts support the two

---

[21] The police surveillance tape shows, in relevant part:

CARLSON: I hope to have enough to go for four more tonight. Can you get four more tonight? Yes?

PETITIONER: Yea[h] . . .

. . .

separate agreements for the purchase, sale or delivery of two separate quantities of cocaine. Petitioner's allegations fail to show that his convictions for the two conspiracy charges violate the prohibition against double jeopardy and warrant no federal habeas relief.

**Ground Five**

Petitioner contends that the State failed to produce sufficient evidence to support his convictions. The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970). In a challenge to a state criminal conviction brought pursuant to Section 2254, a petitioner is entitled to habeas relief on a claim of insufficient evidence "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at trial established

---

GAUTHIER: How much are you gonna [sic] have when we get back? Cause [sic] my Dad sent that check for . . . he's got what, Ken?

PETITIONER: Eighteen.

GAUTHIER: My Dad sent that check for two so if I hand that to my man that check for two.

PETITIONER: Nah. There's no more short. I've gone short. He told me no more. We're only gettin [sic] two now.

GAUTHIER: I know. Just tryin [sic].

. . .

GAUTHIER: You don't have a hundred more even if I put that check in.

. . .

PETITIONER: Well, just go twice. It would look good if we went twice. That'd be better. . . .

(Dkt. #9, Ex. 33, Vol. III, pp. 454; Vol. VIII, pp. 756-58).

guilt beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. at 318-19 (*quoting Woodby v. INS*, 385 U.S. 276, 282 (1966) (emphasis in original)).

Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law. *Jackson v. Virginia*, 443 U.S. at n. 16. "Although each element of the offense must be established beyond a reasonable doubt, *see Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990) (*citing Jackson [v. Virginia]*, 443 U.S. at 316) the State is not required to rule out every hypothesis except that of the guilt of the defendant, *see Jackson [v. Virginia]*, 443 U.S. at 326)." *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Johnson v. Alabama*, 256 F.3d at 1172. In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and weighing the evidence. *Johnson v. Alabama*, 256 F.3d at 1172 (*citing Jackson v. Virginia*, 443 U.S. at 326).

To prove the crime of trafficking in cocaine, the State must prove four elements beyond a reasonable doubt: (1) the defendant knowingly sold, delivered, and/or possessed a certain substance; (2) the substance was cocaine or a mixture containing cocaine; (3) the quantity of the substance involved was 28 grams or more; and (4) the defendant knew that the substance was cocaine or a mixture containing cocaine. Fla. Std. Jury Inst. 25.10. The crime of conspiracy consists of an express or implied agreement between two or more persons to commit a criminal offense. Both an agreement and an intention to commit an offense are necessary elements of this crime. *Chiaponni v. State*, 595 So.2d 1042, 1043 (Fla. 4th DCA 1992); Fla. Std. Jury Inst. 5.3.

Petitioner argues that the State failed to produce any evidence to support the conspiracy charged in Count II of the amended information. Count II charged a conspiracy occurring between

August 19, 1997, and August 20, 1997. At trial, Carlson testified that he sold cocaine for Petitioner and Gauthier. On August 19, 1997, a man called Carlson asking for cocaine. Carlson advised the man that he could not get cocaine that evening but could have some the next day. The following morning, Petitioner delivered two ounces of cocaine to Carlson. Carlson delivered one ounce of cocaine to the man at the auto parts store in exchange for money.

Viewing the State's evidence of Petitioner's guilt in the light most favorable to the State and using the objective reasonableness test, a rational trier of fact could find Petitioner committed the conspiracy alleged in Count II of the amended information, a crime for which he stands convicted. The jury could infer from Carlson's testimony that Carlson contacted Petitioner after Carlson received the call concerning the purchase of cocaine. The fact that Petitioner delivered cocaine to Carlson on August 20, 1997, shows that Carlson and Petitioner agreed to the delivery. *See Chiaponni v. State*, 595 So.2d at 1043 ("Direct proof of a formal agreement is not necessary. Therefore such proof may be inferred from appropriate circumstances.").

Petitioner also argues that the State failed to produce any evidence to support the conspiracy charged in Count III of the amended information. Count III charged a conspiracy between Petitioner and Gauthier to traffic in cocaine. The evidence adduced at trial shows that Petitioner and Gauthier agreed to facilitate the purchase and delivery of four ounces of cocaine, a transaction separate from the delivery of the two ounces of cocaine to Carlson on August 20, 1997. The testimony of Deputy Schneider and the police surveillance tapes support the charge. The state appellate court's

affirmance[22] of Petitioner's convictions on Counts II and III was neither an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts.[23]

## Ground Six

Petitioner alleges that the State improperly withheld evidence from the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[24]  Specifically, Petitioner points to the following:

1)  information that State witness Michelle Wagner was not charged with offenses for which she had been arrested on condition of her testifying against Petitioner;

2)  evidence that $3,000.00 had been confiscated from John Carlson's residence;

3)  the existence of two (2) sets of tapes from the conversation recorded on August 20, 1997; one (1) set from the wire worn by Carlson and another from a microphone which had been placed in the room; and

4)  the existence of information indicating Carlson's true source of cocaine and his connections to drug suppliers including, but not limited to, the fact that Carlson procured the cocaine which he alleged Petitioner delivered to him from a supplier named "Steve" and that Carlson, after having been released form jail for the purpose of further assisting law enforcement, was arrested for narcotics sales and possession which was "behind the back" of his law enforcement controllers indicating that he did have access to narcotics from other sources.

(Dkt. #1, Attach. 3, p. 25).  The state court rejected this claim in Petitioner's Rule 3.850 motion, in relevant part, as follows:

---

[22] The state appellate court's affirmance warrants deference under Section 2254(d)(1).  *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).

[23] Petitioner also challenges the sufficiency of the evidence to support the trafficking offense charged in Count I of the amended Information.  However, Petitioner failed to present this aspect of his claim on direct appeal. Accordingly, the claim is unexhausted.  Petitioner cannot return to state court to present the claim in a second direct appeal or successive Rule 3.850 motion, resulting in a procedural default of this claim.  Petitioner fails to argue and the record fails to show cause and prejudice or manifest injustice to excuse the default.  This default bars federal habeas review of this claim.

[24] *Brady* holds that the failure of a prosecutor to disclose evidence favorable to a defendant violates due process where the evidence is material to either guilt or punishment.  *Brady v. Maryland*, 373 U.S. at 87.

Defendant contends that the State withheld exculpatory evidence from Defendant at trial. As to his claim based on <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Defendant states that the State withheld several pieces of evidence from Defendant. To successfully demonstrate a Brady claim, Defendant must show that the state failed to disclose exculpatory evidence during discovery: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. <u>Ventura v. State</u>, 794 So.2d 553 (Fla. 2001). Each will be addressed separately below:

1.    Defendant asserts that the State failed to disclose that $3,000 was seized from John Carlson on his August 20, 1997 arrest. . . . Defendant states that Det. Schneider was involved in his arrest. The State is not required to provide Defendant with the facts that the witness will testify to at trial. Det. Schneider's name was listed in the discovery provided by the State. Therefore, said information could have been discovered.

2.    Defendant asserts that the State failed to provide Defendant with the existence that [sic] there were two taped conversations regarding the events in Carlson's apartment on August 20, 1997, one of the wire-tape Mr. Carlson wore, and the other set up in the apartment itself. Later . . . Defendant acknowledges that the defense reviewed the tapes and found the same alleged alterations. He further acknowledged knowing of the tapes' existence. Further, when Defendant objected to the tape's admission into evidence as he claimed the tape was altered to exclude the exculpatory portions of his and his wife/co-defendant's conversation, as he now does . . . , the Court ruled that Defendant had sufficient time to review and have the tapes analyzed before trial. Further, the Court previously entertained and found during a pre-trial motion in his wife/co-defendant's case adopted by Defendant's own counsel, that the State provided all tapes in its possession to the defense.

3.    Defendant next contends that the State failed to supply "information and evidence regarding Carlson's true source and access to drug suppliers . . . ." This claim is speculative and conclusory. Defendant does not state the names of the witnesses or nature of the evidence that the State possessed which they did not disclose to the defense. Further, Defendant could have investigated such on his own. Defendant states . . . several leads provided after counsel deposed Mr. Carlson. It is also noted that Defendant motioned for and was granted the services of a private investigator.

. . .

6.    Defendant contends that the State withheld the existence of Mr. Carlson's narcotics arrests. This is not exculpatory evidence, since he does not reflect on Defendant's guilt, and the State was not obligated to provide such. It is further noted that based on the facts of this case, that the jury was aware that Mr. Carlson was a drug dealer and could further deduce by his acting as a confidential informant that he had narcotics arrests.

7.    Defendant contends that the State withheld the existence of plea agreements and consideration afforded Mr. Carlson and Ms. Michelle Wagner in exchange for their testimony. Defendant has failed to show that any such agreements existed. Both witnesses denied having been promised leniency in exchange for their trial testimony.

. . .

As such, the above referenced subparts of his claim are denied.

(Dkt. #9, Ex. 26).

To establish a *Brady* violation, a defendant must prove: (1) that the government possessed evidence favorable to the defense; (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence; (3) that the prosecution suppressed the evidence; and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. *United States v. Schier*, 438 F.3d 1104, 1106, n.1 (11th Cir. 2006) (citing *Moon v. Head*, 285 F.3d 1301, 1308 (11th Cir. 2002)). A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding. *See United States v. Bagley*, 473 U.S. 667, 682 (1985). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). To meet this standard, a defendant need not demonstrate that, after discounting the inculpatory evidence in light of the evidence in question, insufficient evidence existed to convict him. *See Taylor v. Singletary*, 122 F.3d 1390, 1395 (11th Cir. 1997). Rather, the

defendant must show that the suppressed evidence, reasonably taken, puts the whole case in such a different light as to undermine confidence in the verdict.

Pursuant to *Brady*, a defendant's right to due process is violated when the prosecution suppresses evidence favorable to the defendant where the evidence is material to either guilt or punishment. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). Petitioner fails to demonstrate both that the State suppressed the five items of evidence he delineates in ground six and that a reasonable probability of a different outcome exists had the State disclosed the evidence to the defense.

Petitioner further alleges in ground six that the State knowingly presented false and perjured evidence to the jury in violation of *Giglio v. United States*, 405 U.S. 150 (1972). The state court rejected this claim in Petitioner's Rule 3.850 motion, in relevant part, as follows:

> Defendant contends that the State knowingly presented false and perjured evidence based on <u>Giglio v. U.S.</u>, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Specifically, he states that the State knew that Ms. Wagner's testimony that she was not arrested on August 20, 1997, and that she and Mr. Carlson's testimony that each was not given leniency in exchange for testimony were false.
>
> To establish a violation of <u>Giglio</u>, the defendant must show: (1) that the testimony was false; (2) that the prosecutor knew the testimony was false and did not correct the false testimony; and (3) that the statement was material. <u>See</u> <u>Ventura v. State</u>, 794 So.2d 553 (Fla. 2001). Pinellas County jail records indicate that Ms. Wagner was never formally arrested on August 20, 1997. Nor does he attach a copy of the referenced police report . . . as proof.
>
> Although the State failed to file an Information to Ms. Wagner's charge in CRC97-32242MMANO on January 28, 1998, Defendant has failed to sufficiently link the State Attorney's action with her trial testimony over a year later. To the contrary as Defendant suggests . . ., the record indicated that the charges in 97-128589PANC were prosecuted. Nor has Defendant shown that Mr. Carlson received special consideration. As he has failed to show that the testimony was false, this claim is denied.

(Dkt. #9, Ex. 26).

A *Giglio* error occurs when "undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." *Ventura v. Attorney Gen., Fla.*, 419 F.3d 1269, 1276 (11th Cir. 2005) (*citing United States v. Agurs*, 427 U.S. 97 (1976)). "In order to prevail on a *Giglio* claim, a petitioner must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *Tompkins v. Moore*, 193 F.3d 1327, 1339 (11th Cir. 1999). A falsehood is deemed "material" if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995).

Petitioner presents no evidence to show that Wagner testified falsely about her arrest or that the State knew her testimony was false. Even if he could so demonstrate, Petitioner fails to show that Wagner's testimony had an effect on the verdict. *United States v. Alzate*, 47 F.3d at 1110. Thus, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts. Ground six warrants no relief.

**Ground Seven**

Petitioner alleges that the state court failed to offer him counsel for direct appeal. Petitioner contends that he did not waive his right to counsel and that the state court's failure to obtain a waiver and provide him counsel deprived him of his constitutional right to counsel on direct appeal.

To satisfy the exhaustion requirement, Petitioner must have fairly presented the substance of his federal claim to the state courts. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). Fair presentation requires presentation of a claim to the state courts "in a procedural context in which its

merits . . . will be considered." *Castille v. Peoples*, 489 U.S. 346, 351, (1989) (holding that submission of a new claim to a state's highest court on discretionary review does not constitute fair presentation). Petitioner presented this claim for the first time to the state appellate court in his motion for rehearing (Dkt. #9, Ex. 5).[25] Respondent correctly argues that state procedural rules precluded Petitioner from presenting this claim in his motion for rehearing. Rule 9.330, Florida Rules of Appellate Procedure, provides that a motion for rehearing "shall not present issues not previously raised in the proceeding." Fla. R. App. P. 9.330. Because Petitioner failed to raise this claim in a proper manner for consideration on the merits, he did not fairly present the claim to the state courts.

Petitioner's failure to present this claim on direct appeal means that he deprived the state courts of a full and fair opportunity to resolve this constitutional issue by invoking one complete round of the State's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. at 845. "Federal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile." *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999). Petitioner cannot return to state court to present this claim in a second direct appeal or a successive Rule 3.850 motion. Consequently, the claim is procedurally defaulted. Petitioner neither shows cause and prejudice nor

---

[25] The state appellate court granted the motion for rehearing on the issue of sentencing only:

> Kenneth M. Fortner challenges his convictions and sentences for one count of trafficking in cocaine and two counts of conspiracy to traffic in cocaine. Although he raises nine issues on appeal, we find merit only in Fortner's contention that he was improperly sentenced as a habitual offender. We agree that the trial court erred in imposing a habitual felony offender sentence on the trafficking and the conspiracy to traffic in cocaine charges, and reverse. See Bryant v. State, 760 So.2d 1034 (Fla. 5th DCA 2000); Clay v. State, 750 So.2d 153 (Fla. 1st DCA 2000); § 893.135(5), Fla. Stat. (1997).

(Dkt. #9, Ex. 6).

satisfies the miscarriage of justice exception to excuse the default. Thus, this claim is procedurally barred from federal review.

Even if the claim was not barred, it lacks merit. The trial court advised Petitioner at the sentencing hearing that he had the right to have an attorney appointed for direct appeal if he could not afford one (Dkt. #9, Ex. 33, Vol. III, p. 506). Petitioner fails to contend that he moved for appointment of counsel or that the state courts denied a request for counsel to represent him on direct appeal. Petitioner attached to his federal habeas petition a copy of his "Request for Limited Relinquishment of Jurisdiction" (Dkt. #1, Attach. 4) filed in the state appellate court in which he advised that he was proceeding *pro se* "until counsel can be retained to represent me." Petitioner fails to demonstrate the denial of any constitutional right with respect to this claim and the claim warrants no federal habeas relief.

It is therefore ORDERED AND ADJUDGED that:

1.    Petitioner's petition for the writ of habeas corpus (Dkt. #1) is DENIED.

2.    The Clerk is to enter judgment for Respondent and close this case.

**DONE** and **ORDERED** in Tampa, Florida on _March 10th_ , 2008.

_____
**JAMES D. WHITTEMORE**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:
Counsel/Parties of Record